FILED

97 JAN 17 PM 12:09

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILSON OIL CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | CV-95-AR-2023-S |
| | ) | |
| FEDERATED MUTUAL INS. CO., | ) | |
| | ) | |
| Defendant. | ) | |

Cho

ENTERED

JAN 17 1997

**MEMORANDUM OPINION**

The court allowed defendant, Federated Mutual Insurance Company ("Federated"), to file a belated a motion for summary judgment in the above-styled case because it became apparent that at trial the case was going to turn on questions of law and not questions of fact. Federated's motion is well taken for the reasons hereinafter stated.

**A. Pertinent and Undisputed Facts**[1]

Benjamin F. Glass, Carla L. Glass Hillard, and Cheryl R. Glass, are the owners, in fee simple, of the leased premises that are a subject of this action and that are located at 4656 Highway

[1]A significant portion of the facts, agreed to by the parties, are taken from the bankruptcy Settlement Agreement entered into by the parties on February 22, 1995, and approved by the Bankruptcy Court on April 18, 1995.



27

280 East in Shelby County, Alabama ("the leased premises"). In March 1990, the fee simple owners executed a twenty year ground lease of the leased premises to Montgomery Oil, Inc. ("MOI"). In August 1990, MOI executed a seven year sublease of the leased premises to R.D. Montgomery ("Montgomery"). On August 3, 1990, First Alabama Bank ("FAB") made a construction loan to MOI for the purpose of financing the construction of a convenience store and gas station on the leased premises. The loan was evidenced by a promissory note from MOI in favor of FAB, secured by a mortgage executed by all parties needed to give FAB a first lien. MOI subsequently executed four additional promissory notes in favor of FAB.

In January 1994, Montgomery executed an agreement with Wilson Oil Co., Inc. ("Wilson"), plaintiff in the present action, and with Raymond Wilson, vice president of and a stockholder in Wilson, whereby Montgomery sold Wilson certain assets on the leased premises and agreed to "sub-sublease" the leased premises to Wilson with all the rights provided in the original lease. This transaction was closed on July 11, 1994. However, at the time of the sub-sublease, FAB retained the accommodation mortgage on the leased premises that had not been extinguished. On July 12, 1994, Wilson "sub-sub-subleased" the leased premises to Mott Oil Company

("Mott"). The Wilson-Mott sub-sub-sublease contained a provision whereby Wilson agreed to indemnify Mott for all liability arising out of the sub-sub-sublease agreement.

Unbeknownst to Wilson, Montgomery had executed an asset sale and sixteen year sublease, with two five-year options, of the leased premises to James R. McQueen and Fred M. Bohannon, d/b/a McQueen-Bohannon Partnership ("McQueen-Bohannon") in February, 1994. On July 13, 1994, Wilson ejected McQueen-Bohannon from the disputed premises.[2] McQueen-Bohannon filed a suit against Wilson in Alabama state court for wrongful ejectment on August 1, 1994.

After the wrongful ejectment action began, Wilson, McQueen-Bohannon, and FAB all sought relief from Montgomery who subsequently filed for Chapter 11 bankruptcy, *In re R.D. Montgomery*, 94-5577-BGC-11 ("the Montgomery bankruptcy"). In September 1994, FAB sought relief from the automatic stay in the Montgomery bankruptcy so that it could foreclose. Predictably, a dispute arose among various parties with respect to their competing rights to the leased premises. With such a convoluted series of transactions the dispute was inevitable. Wilson filed an adversary

[2]The exact facts constituting the ejectment are not known to the court. All parties concede that Wilson took possession of the premises on July, 13, 1994, and that McQueen-Bohannon, who was previously in possession of the premises, asserted in its complaint that Wilson's ejectment of McQueen Bohannon was forcible and wrongful.

proceeding against Montgomery on November 22, 1994. Montgomery, in turn, filed an adversary proceeding against FAB and Wilson on January 4, 1994. The parties settled theses adversary proceedings in the Montgomery bankruptcy on April 18, 1995.[3]

Pursuant to the settlement agreement Wilson was to pay $35,000.00 to Max C. Pope, the Trustee of the MOI Chapter 7 bankruptcy, *In re Montgomery Oil, Inc.*, 94-7113-TOM-7. Wilson dismissed with prejudice its adversary proceeding in the Montgomery bankruptcy, but retained an unsecured claim in the Montgomery bankruptcy in the amount of $25,000.00 and retained an unsecured claim in MOI's Chapter 7 bankruptcy in the amount of $35,000.00. The Montgomery bankruptcy proceeding was dismissed by the bankruptcy court on April 18, 1995.[4]

**B. Summary Judgment Standard**

Rule 56, F. R. Civ. P., states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

[3]There are two bankruptcies that arose surrounding these transactions. One, the Montgomery bankruptcy, 94-5577-GBC-11, was dismissed pursuant to a February 22, 1995, settlement agreement on April 18, 1995, by the bankruptcy court. The other proceeding, *In re Montgomery Oil, Inc.*, 94-7113-TOM-7, relating to MOI's bankruptcy is still an active case.

[4]The other parties' obligations are set forth in the settlement agreement attached as "Exhibit B" to Federated's evidentiary submission of December 27, 1996.

> that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). As stated by the Eleventh Circuit, "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). Federated has moved for summary judgment in the present action on several grounds.

**C. Legal Analysis**

First, Federated claims that Wilson never asserted in its complaint, and never sought formally, to amend its complaint to assert a claim against Federated for indemnity based on monies paid to the MOI bankruptcy trustee pursuant to the bankruptcy settlement agreement. Alternatively, Federated argues that the claim by Wilson does not fall under the specific insurance policy language. The court agrees with both of these contentions.

**1. The Complaint**

Wilson initiated this action in the Circuit Court of Jefferson County seeking a declaration that Federated is liable for all defense costs and for indemnification from any liability arising from the underlying wrongful ejectment action filed against Wilson in Jefferson County, later transferred to Shelby County. This

underlying action, specifically referred to in the complaint, sought compensatory and punitive damages against Wilson arising from an alleged "forcible entry by Wilson Oil and an ejection of McQueen-Bohannon from the leased premises." This underlying action has been settled, and Federated paid the settlement amount to McQueen-Bohannon.[5] The instant complaint refers to no other actions against Wilson for which Federated would arguably be required to provide either a defense or indemnity. Thus the issue that brought the case to this court in the first place has become moot. The pretrial order, and the "agreed summary" contained therein, entered on September 17, 1996, confirms that the underlying action for which Wilson seeks indemnification, in

---

[5]Federated submitted an evidentiary filing on January 9, 1996. Part of this filing, noted at tab "1", is a copy of a unilateral release signed by James R. McQueen and Fred M. Bohannon for McQueen-Bohannon on December 31, 1996. The document releases Wilson, Mott, Federated, Ace Lock & Key Inc. ("Ace"), Raymond E. Wilson and Steve Mott from all liability arising from the wrongful ejectment civil action filed in Shelby County, namely *McQueen v. Wilson Oil Co.*, CV-96-0054 (Cir. Ct. of Shelby County, Ala.). This release also acknowledges the receipt, by McQueen-Bohannon, of $67,000.00, paid by Federated, as an accord and satisfaction in the above-mentioned case. Also accompanying the release is a partially signed mutual release that is to release not only the parties released in the December 31, unilateral release, but also McQueen-Bohannon. Wilson, Raymond E. Wilson, and Ace, not a party to the present litigation, have not signed that mutual release. Ostensibly these parties have not signed the mutual release, and have objected to its submission, in an effort to delay the inevitable result in the present case. However, because McQueen-Bohannon has unilaterally given up all its claims against Wilson arising from the ejectment action, and because Federated has paid the settlement and secured the release, Wilson no longer has a claim for indemnity and defense against Federated insofar as the underlying ejectment action is concerned. Furthermore, as evidenced in a January 13, 1997, evidentiary submission, Mott and its insurer have represented that they will not make any claims against Wilson for defense costs arising out of the state court ejectment litigation.

addition to the defense that Federated had supplied, concerns only the McQueen-Bohannon ejectment action and not any other potential controversies between Wilson and Federated.

After the final pretrial order was entered, the court felt certain that the issues had been clearly defined. Rule 16(e) F. R. Civ. P. provides:

> After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice.

Without seeking to amend the pretrial order, Wilson, on November 22, 1996, filed a paper that attempted to change the relevant issues as understood by this court and ostensibly by the litigants themselves up until that time. Wilson admitted that "portions of the underlying litigation have been resolved by settlement," but then asserted:

> [P]laintiff still has damages in the form of $35,000.00 paid to a bankruptcy trustee pursuant to said settlement. In addition, plaintiff claims damages in the approximate amount of $30,000.00 for attorneys fee [sic] paid due to the said underlying litigation.

This $35,000.00 refers to monies paid by Wilson to the MOI bankruptcy trustee pursuant to the bankruptcy settlement agreement. The settlement agreement records Wilson's obligation to pay

$35,000.00 to the MOI bankruptcy trustee in order extinguish liens on the leased premises. Furthermore, it shows that Wilson's adversary proceeding in the Montgomery bankruptcy was to be dismissed with Wilson retaining an unsecured claim of $35,000.00 in the MOI bankruptcy, which is still active. Even though the bankruptcy settlement occurred well in advance of the filing of Wilson's declaratory judgment action, Wilson nowhere mentioned in its complaint the said agreement or Wilson's obligations to pay the MOI bankruptcy trustee. This absence reoccurred in its complaint or in the pretrial order.[6]

This court cannot allow Wilson, after the pretrial conference and final pretrial order, to claim damages based upon an issue not

[6]Wilson's arguments proffered in an attempt to "piggy-back" its claim for the $35,000.00 paid to extinguish liens on the leased premises to the ejectment action are unconvincing. Wilson attempts to argue that the bankruptcy proceedings were the natural consequences of the ejectment, for which Federated has already indemnified Wilson. *See supra* note 5. It is true that the actions are related, but the bankruptcy proceedings could, and most likely would, have commenced even if the ejectment had not occurred. The bankruptcy proceedings are not sufficiently related to the ejectment action so that this court could conclude that the pretrial order gave any notice to Federated that such damages were going to be asserted by Wilson. Furthermore, Federated offered a defense under a reservation of rights as to the ejectment action either directly or by reference. Federated though defended and indemnified Wilson for these actions against claims by McQueen-Bohannon and Mott. In a November 30, 1994, letter to Wilson's attorney, Federated specifically maintained that any defense and indemnity of Mott pertaining to the leasehold title was not covered by the insurance agreement. Apparently a December 14, 1994 letter, never submitted to this court, suggested that Federated would provide a defense for Mott and specifically referred to the November 30, 1994, letter that detailed Federated's reservation of rights. Wilson was clearly on notice that Federated would not cover a defense of the leasehold title. Wilson cannot come along now and contend that Federated waived its coverage defenses as to that claim.

there reflected and not previously asserted. Any claim now raised by plaintiff not contained in the pretrial order is due to be ignored, although, if the issue could have been raised, the failure to raise it may well constitute a *res judicata* bar for its later presentation. *See Oliver v. Russell Corp.*, 874 F. Supp. 367, 371 (M.D. Ala. 1994). "The pretrial order, 'which supersedes the pleadings' controls the subsequent action of the litigation." *Id.* (citing *McGinnis v. Ingram Equip. Co., Inc.*, 918 F.2d 1491, 1494 (11th Cir. 1990)). "[T]he parties are bound by their order and may not introduce at trial issues excluded in the pretrial order." *Id.* (citing *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1015 n.34 (11th Cir. 1982). To recapitulate, the parties mutually agreed upon the pretrial order pursuant to Rule 16(e), and said order was entered on September 17, 1996. *See id.* Because the pretrial order referenced only the underlying ejectment action, Federated's motion for summary judgment is due to be granted, and Wilson's claim monies paid to the MOI bankruptcy trustee is due to be disallowed as not within the complaint or pretrial order.

**2. "Property Damage"**

Assuming erroneously that this court could find that the "manifest injustice" mentioned in Rule 16(e) can be avoided only by

allowing Wilson at the last minute to introduce a new issue, Federated meets the issue head on. Wilson's insurance provides coverage for "bodily injury"[7] and "property damage" under certain circumstances. "Property damage" is defined as:

> (a) Physical injury to tangible property, including all resulting loss of use of that property . . . ; or,
>
> (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[8]

Wilson's $35,000.00 payment to MOI's bankruptcy trustee, apparently to extinguish liens on the leased premises, does not qualify as "property damage" under the terms of the policy.[9] The Alabama Supreme Court, construing exactly the same policy language, found that purely economic losses are not recoverable because such losses do not constitute injury to "tangible property." *See American States Ins. Co. v. Martin*, 662 So. 2d 245, 248-49 (Ala.

[7]No "bodily injury" can or has been alleged in the present action.

[8]Federated also argues that there was no "occurrence" in the present action to warrant coverage. Because the court has determined that there has been no "property damage" in the present case, the court declines to decide whether there has been an "occurrence."

[9]Wilson contends that because an "insured contract" does not fall under one of the policy "exclusions" relating to "property damage" coverage that all liability that arises from such an "insured contract", in this case the indemnity agreement between Wilson and Mott, is covered by the policy. This is not the case. The exception from the exclusion for insured contracts simply allows coverage in the event that a party to an insured contract is sued for property damage. The lien payments, as noted above, simply do not qualify as property damage.

1995)(citing cases). In *American States,* like the present case, plaintiff "[does] not claim that the [disputed] parcels of land . . . on which [it] had [mortgages or liens], were physically damaged, but rather, that [another party] failed on promises" to extinguish the liens or pay mortgages. The payment to the bankruptcy trustee does not constitute damage to "tangible property" and is therefore not recoverable under the policy language. "The language used [in plaintiff's policy] is based on the assumption that tangible property, unlike an economic interest, is generally subject to physical damage or destruction." *Id.* at 249. Furthermore, there is no evidence that Wilson was ever damaged by the loss of use of its property. Even if the payment was not to extinguish liens on the leased premises, as Federated extrapolates from the settlement agreement, plaintiff has not made any showing that the $35,000.00 it claims for its payments to the bankruptcy trustee relate in any way to property damage. Rather, Wilson simply asserts that it is entitled to money. If this court were willing to amend the pretrial order defendant's motion for summary judgment would still be granted.

**Conclusion**

The underlying ejectment action has been settled with Federated defending and indemnifying Wilson for all costs and

payments made relating to that action. This action has been mooted. Wilson may not now claim indemnification from Federated for monies paid to the MOI bankruptcy trustee and may not claim any attorney's fees related to such a claim. For these alternative reasons Federated's motion for summary judgment is due to be granted and Wilson's action is due to be dismissed.

DONE this 17th day of January, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT